IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LEE J. FISCHER,                                             Case No. 6:16-cv-00740-SU

                          Plaintiff,

            v.                                                    **OPINION**
                                                             **AND ORDER**
COMMISSIONER, Social
Security Administration,

                          Defendant.
_____

SULLIVAN, United States Magistrate Judge:

        Plaintiff Lee J. Fischer brings this action pursuant to the Social Security Act (the "Act"),

42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"). The Commissioner denied plaintiff Disabled Child's Insurance

Benefits under Title II of the Act, § 202(d)(1)(B)(ii), as amended, 42 U.S.C. § 402(d)(1)(B)(ii).

Plaintiff requests a determination that she became disabled before her twenty-second birthday,

and thus is entitled to Disabled Child's benefits; she asks the Court to reverse the decision of the

Administrative Law Judge (the "ALJ") and remand this matter for immediate calculation and

payment of such benefits, or in the alternative, to remand for further administrative proceedings.

Page 1 – OPINION AND ORDER

*See* Pl.'s Br. (Docket No. 8), at 20.  The Commissioner opposes plaintiff's Complaint in part, and requests that the Court remand for further administrative proceedings.  *See* Def.'s Br. (Docket No. 13), at 8-9.  For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this matter for immediate calculation and award of benefits.

## FACTUAL BACKGROUND

Plaintiff was born on November 8, 1988, and turned twenty-two years old on November 8, 2010.  Tr. 117.[1]  At the time of plaintiff's alleged onset date of disability—December 1, 2009—she was twenty-one years old, under the age of twenty-two; at the time of the ALJ's established onset date of disability—April 2, 2012, Tr. 20—she was twenty-three years old.

Plaintiff suffers from major depressive disorder and generalized anxiety disorder (under the applicable regulations, 12.04 Affective Disorders and 12.06 Anxiety-related Disorders, respectively, Tr. 22-26[2]), characterized, *inter alia*, by depression, anxiety, panic attacks, difficulty concentrating, anhedonia,[3] insomnia, inability to eat, nausea, and abdominal pain.  Tr. 22-27 & 389-91.  She is largely unable to function by, or to care for, herself.  Tr. 23-26.

Plaintiff matriculated at Princeton University at age sixteen.  Tr. 23.  In December 2009, she experienced severe depression and anxiety, and received inpatient mental health treatment at the Princeton University Health Services and Counseling and Psychological Services.  Tr. 344-75.  She then left school for home, and has not been able to return to Princeton since, or even audit classes at nearby colleges.  Tr. 310.  In 2011, she began experiencing stomach pains and other abdominal symptoms, resulting in an inability to eat, and/or anorexia, Tr. 389-442; this

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer on September 2, 2016.  (Docket Nos. 6 & 7).
[2] 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04 & 12.06.
[3] "Absence of pleasure from the performance of acts that would ordinarily be pleasurable." *Anhedonia*, Stedman's Medical Dictionary 42670 (2014).

may have resulted from plaintiff's depression and anxiety, Tr. 415. These gastrointestinal problems caused dramatic weight loss: from 106 pounds to 76 pounds in two-and-a-half years (March 2010 to November 2012). Tr. 386 & 414-15. Plaintiff resides with her parents, Robert J. Fischer and Jianping Li, who care for her. Tr. 202, 263, 270 & 307.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for Disabled Child's Insurance Benefits on October 29, 2012. Tr. 19. She also protectively filed an application for Supplemental Security Income Benefits on September 3, 2013. *Id.* In both applications, plaintiff alleged a disability onset date of November 1, 2008, *id.*, though this was corrected to December 1, 2009, Tr. 114 & 177, as the ALJ acknowledged at the hearing, Tr. 47. Plaintiff's application for Disabled Child's benefits was denied initially on February 20, 2013, and upon reconsideration on August 20, 2013. Tr. 19. Plaintiff filed a written request for hearing on September 4, 2013. *Id.* The Supplemental Security Income Benefits application was escalated to the hearing level without initial or reconsideration determinations, so it could be considered alongside plaintiff's Disabled Child's benefits application at the hearing. *Id.* A hearing was held on August 27, 2014, in Eugene, Oregon, before ALJ Robert F. Spaulding. Tr. 19 & 31. A vocational expert, Steven R. Cardinal, appeared at the hearing but did not testify. Tr. 19. No medical advisor expert appeared at the hearing or was consulted. *See* Tr. 41-85 (hearing transcript).

On October 23, 2014, the ALJ issued a decision finding plaintiff disabled under the Act as of April 2, 2012—after her twenty-second birthday—but not before. Tr. 20 & 31. The ALJ found that the record did not support plaintiff's allegations of disability dating from December 2009. Tr. 22. This determination entitled plaintiff to Supplemental Social Security Income, but not to Disabled Child's benefits, because in order to receive such benefits she would have to

have become disabled before her twenty-second birthday.    Tr. 30-31; 42 U.S.C. § 402(d)(1)(B)(ii).

Plaintiff then sought review by the district court.  Compl. (Docket No. 1).[4]

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[The court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." (quotation omitted)).

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

---

[4] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636.  (Docket No. 12).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41 & n.5; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141. At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Id.*; 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. *Id.* § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 2, 2012. Tr. 21. At step two, the ALJ determined that plaintiff had the medically determinable impairments of major depressive disorder and general[ized] anxiety disorder, but that prior to April 2, 2012, these did not, singularly or in combination, significantly limit plaintiff's ability to perform basic work-

related activities, and so were not "severe" under the Act. Tr. 22. However, the ALJ further

determined that, beginning on April 2, 2012, plaintiff *did* have the following severe impairments:

major depressive disorder, recurrent, severe without psychotic features; general[ized] anxiety

disorder; and panic disorder; she thus was not disabled before April 2, 2012, but became disabled

on that date. Tr. 26 & 30.

## DISCUSSION

Plaintiff argues that the ALJ committed three legal errors: (1) he did not give any weight

to the opinions of treating physicians Drs. James Buie and John Ford concerning the period

between December 1, 2009, and April 2, 2012; (2) he did not consider the observations of five

lay third-party witnesses for the time before April 2, 2012; and (3) in the alternative, he did not

comply with Social Security Ruling ("SSR") 83-20. Pl.'s Br. (Docket No. 8), at 4. In response,

the Commissioner argues that, although the ALJ did commit legal error by not crediting certain

testimony, the appropriate remedy is to remand for further proceedings and evaluation of a

disability onset date. Def.'s Br. (Docket No. 13), at 2-7. As discussed below, the Court finds

that the ALJ erred by not giving weight to the treating physicians' opinions, and by not

considering the third-party testimony, for the period before April 2, 2012. The Court further

finds that, when that evidence is properly considered, and that testimony is credited as true, the

record establishes plaintiff's disability onset date of December 1, 2009.

**I.**    **The Opinions of Treating Physicians Buie and Ford**

    **A.**    **James Buie, M.D.**

        1.    Dr. Buie's Observations and Opinions

James Buie, M.D., was plaintiff's primary care physician from at least 2006, Tr. 445,

through his retirement in June 2013, Tr. 513. He opined on plaintiff's condition multiple times

in the Administrative Record.  After plaintiff's return home from Princeton in December 2009, plaintiff saw Dr. Buie for a physical, and he diagnosed her with "Major depressive disorder with panic and anxiety."  Tr. 382-84.  He recorded her reports of depression, anxiety, panic attacks, "sadness, crying, [and] inactivity."  Tr. 383.  In notes from subsequent office visits over the next few months, Dr. Buie repeated findings of depression, insomnia, and anxiety.  Tr. 385-88.

On November 15, 2012, Dr. Buie provided plaintiff with a letter in which he stated that, since her return from Princeton in 2009, she has "been unable to return to work or to school and [has] regressed into a depressive state which is now associated with GI problems such as anorexia and abdominal pain, and insomnia."  Tr. 445, 482-83.  In a similar letter from April 2013, Dr. Buie stated that plaintiff "has mental impairment [sic] that has kept her from doing any kind of substantial work since at least 2009 when she was about 21 years old."  Tr. 481.  In another letter from April 2013, Dr. Buie reported plaintiff's symptoms beginning in fall 2009, including difficulty concentrating, sleeping, and getting out of bed; he observed that she had poor judgment and insight; he recorded her as feeling hopeless, with low energy, low self-esteem, and anhedonia; and he recorded "panic attacks with pseudoparalysis, sweating, overwhelming and inability to function."  Tr. 484.  He reported that plaintiff demonstrated "depression, anxiety, panic attacks and insomnia."  Tr. 485.  Dr. Buie continued:

> Since 2009 she has left Princeton; has not recovered, nor had any substantial work opportunity, function, or significant treatment of her depression, nor has been able to do any substantial work or function.  She is completely dependent in most adult daily skills of living.  She is dysfunctional in multiple areas . . . .

*Id.*

## 2.    Legal Standard Regarding a Treating Physician's Opinions

"[I]f a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the

treating physician's opinion is given controlling weight." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). "An ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* "Similarly, an ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* at 1202-03.

### 3.    The ALJ's Evaluation of Dr. Buie's Opinions

The ALJ stated that he was "unable to give weight to Dr. Buie's statement prior to April 2, 2012, as his own medical records, as well as the record generally[,] do not support the level of severity endorsed in" Dr. Buie's (second) April 2013 letter. Tr. 28. This does not constitute a legally sufficient basis to reject Dr. Buie's opinions. First, as explained below, Dr. Buie's statements regarding the severity of plaintiff's limitations, and his conclusions, *are* supported by ample evidence in the record. Second, even if his statements were not so supported,

> the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct.

*Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quotations omitted). The ALJ did not do this; he merely stated his conclusion not to credit Dr. Buie's opinions. He did not provide specific and legitimate reasons, nor identify substantial evidence in the record. Further, even if the ALJ did provide sufficient grounds to discount Dr. Buie's opinions, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* at 631-32 (quotation omitted). In many cases, a treating physician's medical opinion will be entitled to the

greatest weight and should be adopted, even if it does not merit controlling weight.  *Id.* at 632. The ALJ's assignment of no weight to Dr. Buie's opinions was legal error.

4.    Evidentiary Support for Dr. Buie's Opinions

The record amply supports Dr. Buie's opinions, and no evidence or testimony contradicts his testimony.

Dr. Buie's own records contain observations that support the level of severity he reported regarding plaintiff's disability.  For instance, following plaintiff's return home from Princeton, Dr. Buie reported that she had panic attacks, characterized as "paralyzed and sweating," Tr. 383, and he assessed plaintiff as having "Major depressive disorder with panic and anxiety," Tr. 384. Two months later, in February 2010, Dr. Buie reported plaintiff's continuing "[d]epression and insomnia," wrote that plaintiff was "unable to actually present" whatever progress she felt she was making, and recorded her continued feelings of being "depressed or bedridden."  Tr. 460. The following month, he repeated that plaintiff had depression and anxiety, and that she continued to have disordered sleep and to lose weight.  Tr. 457.

Additionally, multiple providers, dating back to December 2009, corroborate Dr. Buie's assessment.   On December 7, 2009, Susan Packer, Ph.D., of Princeton's Counseling and Psychological Services ("CPS"), diagnosed plaintiff with major depressive disorder, observed that plaintiff's judgment and insight were poor, and noted that plaintiff reported "feelings of hopelessness, low energy, poor concentration, low self-esteem, anhedonia, and abnormal sleep patterns."  Tr. 349-51.  On December 9, 2009, Kate Salvatore, M.D., also of CPS, recorded plaintiff as having "difficulty concentrating, sleeping, eating" and "trouble getting out of bed." Tr. 352.   Plaintiff reported "extremely anxious moments where she [felt] paralyzed and overwhelmed."  *Id.*  Dr. Salvatore noted that plaintiff reported passive suicidal ideation.  Tr. 353.

Dr. Salvatore's diagnosis was depression, moderate to severe, and severe generalized anxiety disorder. *Id.* On December 11, 2009, Anita McLean, Ph.D., Psy.D., of CPS observed plaintiff as "very tearful and depressed" upon admitting her to inpatient care at Princeton. Tr. 362. Plaintiff reported feelings of hopelessness and passive suicidal ideation. *Id.* Plaintiff's school dean had taken her to CPS out of concern for plaintiff's safety. *Id.*

Further, five other treating or examining physicians or psychologists, and one counselor, subsequently reported plaintiff's severe depression and anxiety as beginning in 2009. Lester Garwood, D.O., of Lane County Behavioral Health Services, in a psychological assessment on July 14, 2014, stated that plaintiff had "suffered from unrelenting depression for at least five years now," Tr. 582, and was "essentially anhedonic, and ha[d] been for four or five years now," Tr. 583. While conducting a psychodiagnostic evaluation for Disability Determination Services, on August 15, 2014, Alison Prescott, Ph.D., concluded that "[t]he long term nature of [plaintiff's] 5 year disability and loss of functioning is perhaps the most significant aspect of her condition." Tr. 617. Dr. Prescott later wrote in an email to plaintiff's parents that she did "think [plaintiff] has been disabled for 5 years." Tr. 322. Similar reports came from Kristen Foster, P.A., Ph.D.;[6] Gregory Schwartz, M.D.;[7] Theresa Buckley, M.D.;[8] and Cynthia Young, M.A., CACD1.[9] Thus, Dr. Buie's conclusion regarding the duration of plaintiff's disability and severity of her loss of functioning are supported by numerous other providers' assessments, going back to December 2009. Significantly, not one provider contradicted Dr. Buie's

---

[6] Plaintiff "was given leave of absence in 2009 for combination of depression, paralyzing anxiety, and abdominal complaints." Tr. 508 (Nov. 11, 2013).

[7] Plaintiff "dropped out in 2009 due to severe depression." Tr. 414 (Nov. 1, 2012).

[8] Plaintiff "was asked to take a leave of absence until she had her depression treated . . . . This was in 2009." Tr. 536 (Sept. 20, 2013).

[9] "In 2009 . . . [plaintiff] was overcome with severe depression and severe anxiety." Tr. 567 (June 30, 2014).

evaluation.  It was legal error for the ALJ to discount Dr. Buie's testimony for the period from December 2009 through April 2, 2012.

5.    Lack of Conflict in the Record with Dr. Buie's Opinions

Contrary to the Commissioner's argument, *see* Def.'s Br. (Docket No. 13), at 5-7, Dr. Buie's opinions do not conflict with other evidence in the record.  The Commissioner identifies three isolated remarks from Dr. Buie's records where he notes that plaintiff had experienced some improvement.  On December 28, 2009, a few weeks after plaintiff's return home from Princeton, Dr. Buie noted that plaintiff was "feeling a little better," Tr. 383, though he also noted continued panic attacks, *id.*, and wrote his diagnosis as "Major depressive disorder with panic and anxiety," Tr. 384.  On March 10, 2010, Dr. Buie noted that plaintiff "has made progress . . . since returning home," although he also noted continued sleep disorder and depression, as well as some weight loss.  Tr. 386.[10]  And on May 4, 2010, Dr. Buie noted that plaintiff "feels very well with improved sleep and mood," though she continued to lose weight.  Tr. 388.  Under "plan," he wrote, "[d]epression lifting."  *Id.*

However, these notes of improvement do not constitute conflicts in Dr. Buie's testimony.  Such statements "must be read in context of the overall diagnostic picture" the physician draws, *Holohan*, 246 F.3d at 1205, in this case, ongoing depression and anxiety that persisted for years.  "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."  *Id.*  The ALJ "cannot simply pick out a few isolated instances of improvement over a period of months or years but must interpret reports of 'improvement' with an understanding of the patient's overall well-being and the nature of her symptoms."  *Attmore v.*

---

[10] This weight loss would continue and grow more serious through 2011.  Tr. 386-89 & 414-15.

*Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quotation omitted).  "[T]he examples an ALJ chooses must *in fact* constitute examples of a broader development."  *Id.* (italics in original, quotation omitted).  Here, the broader picture is clearly of persistent depression and anxiety.  The depression and anxiety, along with the sleep disturbance, anhedonia, low energy, poor concentration, etc., were documented during plaintiff's inpatient care at Princeton, by Dr. Buie upon her return home, and by numerous other providers as discussed above.  Thus, any improvement was temporary.  The ALJ himself found that by April 2, 2012, plaintiff had "medically documented persistent depressive syndrome characterized by anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking," Tr. 30, all of which were observed as far back as December 2009.  Further, despite the notes of some progress, Dr. Buie continued to note patient's poor condition, e.g., on February 15, 2010, when he wrote that plaintiff "feels like she is making progress, but is unable to actually present that."  Tr. 460.

### 6.    Dr. Buie's Credibility

The ALJ and the Commissioner have also questioned Dr. Buie's credibility, and suggested that he was biased in plaintiff's favor.  Attached to an August 27, 2014, letter from plaintiff's father is a two-page statement titled "Regarding Dr. Buie's medical records from 12/28/09 to 10/06/10," Tr. 308-09, signed by plaintiff, but, as the ALJ noted, of unclear authorship, Tr. 24.  The statement, "in general, disagrees with nearly all of the facts contained in the medical evidence of record.  This statement states the author disagrees with the record as a whole, arguing it does not accurately represent the claimant's true condition."  Tr. 24-25.  Indeed, the statement says that Dr. Buie's records may have made plaintiff appear *better* than she actually was: Dr. Buie "was unconsciously influenced to make the claimant look better than she

really was.  His medical records were biased in order to help the claimant return to school and therefore were not an accurate indication of the true extent of claimant's depression and anxiety."  Tr. 308.  The statement controverts a number of Dr. Buie's notes from his records.  Tr. 308-09.  The ALJ appropriately assigned this statement "limited weight" due to its uncertain provenance and seeming disagreement with the entire medical record.  Tr. 24-25.  The ALJ further dismissed the argument that Dr. Buie may have been unconsciously trying to make plaintiff appear better than she was as "ha[ving] no merit," because it "implie[d] Dr. Buie knowingly fabricated his medical records," and because "it does not appear to [sic] that any objections were made by the claimant or her family at the time these chart notes were written or soon thereafter when there was the possibility that their daughter could return to finish her studies."  Tr. 25.

The ALJ then went on to infer that Dr. Buie's testimony regarding the severity of plaintiff's symptoms prior to April 2, 2012, may have been compromised because, if "Dr. Buie tried to help the claimant initially to return to Princeton and tailored his chart notes to that end," then he may have been "endorsing disability" in his opinions regarding plaintiff's disability in order to help her secure disability benefits.  Tr. 28.  The Commissioner argues that Dr. Buie was therefore potentially biased, which constitutes a conflict within his testimony and consequently an outstanding issue that would have to be reconsidered on remand.

Despite the apparent incongruity of the August 27, 2014, statement regarding Dr. Buie's unconscious predisposition, the Commissioner's argument impugning Dr. Buie's credibility is unavailing.  First, if Dr. Buie's medical records really had been unconsciously influenced by a desire to help plaintiff return to school, then, if anything, this creates an inference that plaintiff was *worse* in the months following December 2009 than those records show.  As discussed

herein, those records, even at face value, support the extent of plaintiff's disability and the severity of her impairments, and compel a finding that plaintiff was disabled dating back to December 2009. Second, the ALJ decided to give the August 27, 2014, statement "limited weight," Tr. 24, and to dismiss the argument regarding Dr. Buie's attempt to help plaintiff return to Princeton as having "no merit," Tr. 25. Once the ALJ had discounted the statement, it was inconsistent for him to then *rely* on that statement in claiming that it supported an inference that Dr. Buie may have been lying in subsequent statements in order to help plaintiff secure disability benefits. Third, the ALJ (and the Commissioner) may not so lightly assume that Dr. Buie was dishonest in assessing plaintiff's disability—or in the Commissioner's words, that it was "possible" that Dr. Buie was biased in his opinion to help plaintiff secure benefits. Def.'s Br. (Docket No. 13), at 6-7. The Commissioner "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996) (quotation omitted). The Commissioner must "introduce evidence of actual improprieties" to support such an inference. *Id*. (quotation omitted). There is no evidence of actual impropriety here. The ALJ merely speculates that because one statement (which the ALJ himself decided merited limited weight) suggested a possible bias, it was possible that Dr. Buie was also biased in giving his opinions regarding plaintiff's disability. *See Cook v. Astrue*, No. CV10-526-SU, 2011 WL 2932374, at *12 (D. Or. Apr. 29, 2011), *report and recommendation adopted*, No. 2:10-CV-00526-SU, 2011 WL 2911826 (D. Or. July 14, 2011) ("Although the ALJ chose to characterize [the treating physician] as an 'advocate' for [plaintiff], this is the ALJ's subjective opinion, unsupported by substantial evidence in the record."). "The court may find evidence of impropriety in cases in which inconsistencies exist between the opinion and the doctor's treatment notes, the opinion is wholly conclusory, the opinion is directly

contradicted by other treating physicians, or the doctor is deliberately attempting to mislead the ALJ for the purpose of helping his patient obtain benefits." *Cantrell v. Astrue*, No. CIV. 10-436-HA, 2011 WL 1897910, at *4 (D. Or. May 17, 2011) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996)). No evidence of the sort exists here. Thus, the August 27, 2014, statement is not sufficient to call into question Dr. Buie's credibility, and does not create an outstanding issue that would need further determination upon remand.

### 7.    The Weight of Dr. Buie's Opinions

For these reasons, the ALJ erred in not considering the opinions of Dr. Buie as to the period before April 2, 2012. Dr. Buie was plaintiff's treating physician, and his opinions are uncontradicted in the record. Multiple other providers support his opinions. There is no conflict, nor basis to infer bias in his testimony. Dr. Buie's opinions must be given significant, if not controlling, weight regarding the onset of plaintiff's disability back through December 2009.

### B.    John Ford, M.D.

John Ford, M.D., became plaintiff's primary care physician following Dr. Buie's retirement, and has treated plaintiff since "early 2012." Tr. 512-13.[11] In a February 3, 2014, letter, Dr. Ford wrote that "[b]ecause of her mental and physical condition she has been unable to do any substantial work since 2009, and has not been able to return to school." Tr. 512.[12] He described symptoms of gastrointestinal problems, being unable to eat, being "often . . . unable to leave her house," and having "significantly abnormal" sleep. *Id.* Dr. Ford also noted in office

---

[11] It thus appears there was some overlap in Dr. Buie's and Dr. Ford's care, as Dr. Buie retired in June 2013. Tr. 513.

[12] Indeed, Dr. Ford states that plaintiff may actually have been worse off, and more limited in functioning, than the record suggests and than his evaluation states, given plaintiff's manner of presentation: "I believe that she often presents [as] doing better than she actually is, and on review of her medical records, and discussion with family, I believe that her records today may not accurately reflect how significantly her condition has impacted her ability to function and be productive." Tr. 512.

visit notes from February 22, 2012, that plaintiff had "[l]ong standing depression." Tr. 406. From a December 4, 2013, office visit, he noted, "DEPRESSION, MODERATE, RECURRENT." Tr. 601. From a November 6, 2013, office visit, he wrote "[c]omplains of depressed or sad and anxious / tense or worried." Tr. 605. At a September 1, 2013, office visit he wrote, "[c]omplains of depressed or sad, anxious / tense or worried, and sleep problems." Tr. 610.

The ALJ did not assign Dr. Ford's statements any weight as to the time before he began treating plaintiff in 2012: "Dr. Ford did not begin treating the claimant until February 2012, thus, his opinions about the claimant's retained abilities dating back to 2009 amounts to estimations or hypothesizes [sic]." Tr. 29. This is not a legally sufficient reason to discount Dr. Ford's statements. Retrospective opinions—those concerning a patient's condition before treatment began with a particular physician—are competent evidence. The fact that those opinions are retrospective is neither a specific or legitimate reason, nor one supported by substantial evidence, to reject them. *See, e.g.*, *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) ("[T]he circumstance of a retroactive diagnosis, standing alone, may not be sufficient to discount the opinion of a treating physician."); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."); *Petersen v. Barnhart*, 213 F. App'x 600, 602 (9th Cir. 2006) ("The ALJ's only stated reason for rejecting [the treating physician's] diagnosis is that it was rendered retrospectively. It is well established in this circuit that such a rationale is legally insufficient."); *Cook*, 2011 WL 2932374, at *12 ("The absence of 'first hand knowledge' of a patient's symptoms before treatment begins is not a convincing reason for rejecting the opinion of any medical practitioner."). Moreover, SSR 83-20 anticipates that ALJs *may* rely on such

retrospective diagnoses: "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." SSR 83-20, *available at* 1983 WL 31249, at *3. The ALJ is not permitted to discredit a retrospective opinion solely on the basis of its being retrospective. The ALJ committed legal error in not giving weight to Dr. Ford's opinions.[13] The ALJ should have credited Dr. Ford's opinions regarding plaintiff's disability back through December 2009.

## II.    Lay Third-Party Testimony

The record contains lay testimony from five third-party witnesses regarding the severity of plaintiff's symptoms, both as to the period after the ALJ's established onset date of disability –April 2, 2012—and in the period before, going back to December 2009:

1. Patricia Fisher: Plaintiff's aunt, Patricia Fisher, stated:

Since Lee was ill and sent home from college in December 2009 we have been trying to see her and have been unable to do so. Each time we visit their house, she locks herself in her bedroom and will not come out. Even when we knock on her bedroom door, she will not answer or open it.

Tr. 297.

---

[13] The Commissioner states that there are also conflicts with Dr. Ford's testimony that prevent it from being credited as true. *See* Def.'s Br. (Docket No. 13), at 5. However, the alleged conflict concerns the onset date of plaintiff's gastrointestinal problems, and purports to show a discrepancy between plaintiff's mother's statement at the hearing that such problems began in 2010, and the remaining extensive evidence in the record (including Dr. Ford's records) that state an onset in 2011. If anything, this is a conflict pertaining to plaintiff's mother's testimony, not Dr. Ford's, which agrees with the overwhelming evidence regarding the 2011 onset of gastrointestinal problems. Additionally, the ALJ himself noted no conflict regarding Dr. Ford and the onset date of gastrointestinal problems, and this was not a basis for the ALJ's discounting of Dr. Ford's testimony. The court may not affirm an ALJ's decision on grounds on which the ALJ did not rely. *Orn*, 495 F.3d at 630. Accordingly, there is no conflict with regard to Dr. Ford's testimony, and even if there were, it would not be grounds for affirming the ALJ's decision.

2.  Angie Petroff: Angie Petroff, plaintiff's neighbor for "more than five years,"[14] stated that "[w]e have never seen" plaintiff; instead "[w]e always see her" "aging parents," who "do all the work for [plaintiff] that she is unable to do, such as gardening, picking up the mail, and putting out the trash." Tr. 299. Plaintiff's parents "also do all the shopping." *Id.*

3.  James Bollig: Another of plaintiff's neighbors, James Bollig, stated that he "rarely see[s]" plaintiff since she returned from college in 2009, and has "not seen her with anyone else except her parents." Tr. 284. He stated that plaintiff's "aged parents" do all the yardwork, go shopping, and pick up the mail; plaintiff does not do these activities or help her parents. *Id.*

4.  Walter Johnson: Walter Johnson, the owner of Johnson Farms, where plaintiff's parents had done almost all their produce shopping since the end of 2009, stated that plaintiff's parents do all the shopping and that plaintiff never does, and that plaintiff's father drives his wife to the farm "every few days including winter," despite his two hospitalizations. Tr. 282.

5.  Jianping Li: Plaintiff's mother, Jianping Li, submitted multiple statements regarding her daughter's limitations. She testified that she cared for plaintiff "[d]ay and night," including by sleeping on the floor "in her room to take care of her." Tr. 195 & 233. Plaintiff is unable to go outside alone, and though she walks for exercise, she does so only at night, accompanied by her father. Tr. 198 & 229. As for social engagement, "[s]ince she got the depression in December 2009, she stopped all social contact with other people . . . except for her parents." Tr. 200 & 231. Ms. Li dates the beginning of these limitations in 2009: "Her depression became so severe that she had to withdraw from school in December 2009 and was never able to return to school or work . . . ." Tr. 202, 203 & 233.

---

[14] Ms. Petroff's statement was made August 17, 2014, Tr. 300, and so this five-year span would reach back to before December 2009.

The ALJ stated that "[a]ll third party statements were considered in arriving at the residual function capacity . . . for the timeframe after April 2, 2012." Tr. 27. However, the ALJ gave no reason to disregard or distinguish these third-party statements for the timeframe before April 2012. Each witness's statement explicitly reached back to 2009.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "Such testimony is competent evidence and *cannot* be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quotation omitted, emphasis in original). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). "Disregard of this evidence violates the [Commissioner's] regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Id.* at 919 (quotation omitted); *see also Knepper v. Massanari*, 18 F. App'x 561, 562 (9th Cir. 2001) (holding that the ALJ erred in "failing to fully consider lay testimony, including that of [plaintiff] and her mother, in determining the onset date of" plaintiff's impairments, "as the medical experts were unable to determine the onset date").

Additionally, the applicable regulations anticipate that the ALJ will use third-party evidence to establish an onset date of disability, where medical evidence is unavailable:

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

SSR 83-20, *available at* 1983 WL 31249, at *3.  As discussed above, medical evidence does establish plaintiff's disability as of December 2009 (when the testimony of Drs. Buie and Ford is properly credited).  But even setting that evidence aside, this third-party lay testimony is competent to establish the date of plaintiff's disability and accompanying limitations.

The ALJ committed legal error by not crediting the lay testimony back to 2009, when such testimony explicitly included the period between 2009 and 2012, and by not commenting on or providing reasons, much less individualized germane reasons, for doing so.  He provided no reason to limit his consideration of the witness testimony to the period after April 2, 2012.  This testimony must be credited back to December 2009.

## III.    SSR 83-20 and Consultation of a Medical Advisor

SSR 83-20 provides that "the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."  SSR 83-20, *available at* 1983 WL 31249, at *3.  "[I]n this context 'should' means 'must.'"  *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998).  "If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination."  *Id.* (quotation omitted).

Regarding onset of disability, the ALJ held that "[t]here just is not enough medical records or documentations prior to April 2, 2012, that indicate that the claimant severity in mental impairments that would have limited the claimant's ability to perform basic work related activities.  The record is essentially silent back to the alleged onset date . . . ."  Tr. 26 (errors in original).  This is precisely the situation that SSR 83-20 addresses: if there was uncertainty regarding the onset date based on the medical evidence, then the ALJ was required to consult a

medical advisor and to obtain sufficient evidence to determine the onset date.  "An ALJ's duty to develop the record . . . is triggered . . . when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Thus, were the Court to remand this case for further proceedings, it would order the ALJ to consult a medical advisor per SSR 83-20.    However, as discussed below, when the erroneously disregarded evidence is credited as true (specifically, Drs. Buie and Ford's testimony, and the lay third-party witness testimony), there are no outstanding issues to resolve regarding the determination of disability, and it is clear from the record that the ALJ must find plaintiff disabled as of December 1, 2009.  Given this required finding, the ALJ's error in failing to consult a medical advisor is moot; even with a medical advisor, the ALJ would be required to find a disability onset date of December 1, 2009.

## IV.    Relief

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful.    Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted).  Under the "credit-as-true" rule, three conditions

> must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).[15]   In such circumstances, the court must credit the improperly rejected evidence.  *Id.* at 1022.  The rule does allow some "flexibility": if, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court may remand for further proceedings.  *Id.* at 1021.  It is axiomatic, however, that the reviewing court may not credit testimony and subsequently award benefits contrary to the Act.  *See Vasquez v. Astrue*, 572 F.3d 586, 589 (9th Cir. 2008) (O'Scannlain, J., dissenting).

Here, the Court finds that, crediting the improperly rejected evidence as true, remand for immediate calculation and award of benefits is the proper remedy.  Each step of the test is met:

<u>First</u>, the record is sufficiently developed.  It contains significant medical evidence dating back to 2009, from multiple providers and witnesses, that establish the nature of plaintiff's disability, the details of her symptoms, the extent of her limitations, and the onset date thereof. No supplementation is necessary.  Dr. Buie's testimony, in particular, should have been credited back to 2009 and given significant, if not controlling, weight, given its detail and given the length of his treating relationship with plaintiff, and Dr. Buie's testimony amply establishes plaintiff's disability back to December 2009.   Further proceedings would serve no useful purpose.

<u>Second</u>, the ALJ erred in discounting the treating physician and lay witness testimony regarding the period between December 2009 and April 2, 2012, as discussed above.

---

[15] The Ninth Circuit has repeatedly stated that the credit-as-true rule prevents the unfairness of subjecting a claimant to further unnecessary administrative proceedings following an ALJ's error: "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."  *Benecke,* 379 F.3d at 595; *see also Garrison*, 759 F.3d at 1021-22.

<u>Third</u>, if the ALJ properly credited the evidence from plaintiff's treating physicians, and from the multiple third-party witnesses, back to December 2009, then the ALJ would be required to find plaintiff disabled beginning December 1, 2009. The record thoroughly establishes that plaintiff's depression and anxiety—which the ALJ found severe beginning April 2, 2012—in fact date to December 2009. The record contains numerous sources establishing that plaintiff's symptoms and limitations associated therewith also date to December 2009. The record contains no contrary evidence or opinion. The record contains no basis for distinguishing between the pre-April 2, 2012, period from the period after that date, and the ALJ did not provide any reason for so distinguishing. The record compels the determination that plaintiff's disability, which the ALJ found as of April 2, 2012, in fact began in December 2009. *See Nelson v. Astrue*, No. 6:11-cv-00084-SI, 2012 WL 1155853, at *11 (D. Or. Apr. 6, 2012) ("Where the record is clear and well-established and the court is otherwise remanding for the immediate award of benefits, it is not improper for the court to also determine the onset date of disability."); *see also, e.g.*, *Groom v. Colvin*, No. 1:15-cv-02103-SI, 2016 WL 6963034, at *7-8 (D. Or. Nov. 28, 2016) (crediting treating physician testimony as true, finding "that the record is complete and there are no outstanding issues that must be resolved," determining the onset date of disability, and remanding for award of benefits," where the ALJ had provided no "rational explanation" for crediting treating physician's opinions regarding plaintiff's disability after a certain time frame and not beforehand); *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1172 (D. Or. 2010) (crediting physician and third-party testimony as true, determining disability onset date, and remanding for award of benefits).

Accordingly, the Court remands this case for calculation and immediate award of benefits, with a disability onset date of December 1, 2009.

## CONCLUSION

For the foregoing reasons, the ALJ committed legal error by not crediting the testimony of plaintiff's treating physicians, and of third-party lay witnesses, as to the period beginning December 2009.  When that evidence is credited as true, the record establishes that plaintiff became disabled at least by December 1, 2009, when plaintiff was twenty-one years old. Plaintiff accordingly became disabled before her twenty-second birthday, and contrary to the ALJ's determination, is eligible for Disabled Child's Insurance Benefits under the Act.  The Court REVERSES the Commissioner's decision and REMANDS for calculation and immediate award of benefits, with a disability onset date of December 1, 2009.

IT IS SO ORDERED.

DATED this 24_ day of __February____, 2017.


/s/ Patricia Sullivan
_____
PATRICIA SULLIVAN
United States Magistrate Judge